J-S52012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF:  J.B.D.E. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.R., MOTHER | No. 569 MDA 2018 |

Appeal from the Decree Entered March 7, 2018
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):
169 AD 2017
CP-22-DP-0000093-2016

BEFORE:  BENDER, P.J.E., MCLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED DECEMBER 17, 2018**

T.R. ("Mother") appeals from the decree entered on March 7, 2018, which involuntarily terminated her parental rights to her minor child, J.B.D.E. ("Child"), born in March of 2016.[1]   Additionally, Mother's counsel filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[2] Following review, we grant counsel's petition to withdraw and affirm the termination decree.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a separate decree that same day terminating the parental rights of Child's father, H.S.E.  Father did not file an appeal.

[2] This matter was previously remanded for counsel to submit a corrected ***Anders*** brief or an advocates brief.  ***See*** discussion *infra.*  Counsel has complied.  We also note that neither the Agency nor the guardian *ad litem* has submitted responsive briefs with this Court.

The trial court summarized the factual and procedural history of this matter as follows:

> In November 2015, the Dauphin County Social Services for Children and Youth ("Agency") began providing services to Mother following a report from a pediatrician's office that Mother appeared dazed and confused during an appointment for her three year old. Mother's two children were deemed dependent and placed in kinship foster care. Five months pregnant with J.B.D.E. at the time, Mother tested positive for PCP. Mother told case workers that her use of PCP did not affect her ability to parent. Throughout the pregnancy, Mother's obstetrician urged her to stop her drug use.
>
> At the time of J.B.D.E.'s birth [i]n March [of] 2016, the Agency received a referral from hospital staff based upon Mother's statement that she could not breast feed J.B.D.E. because she used alcohol and PCP during her pregnancy. J.B.D.E. was admitted to the neonatal intensive care unit because of serious medical problems caused by Mother's substance abuse. On March 21, 2016, the Agency filed an emergency Dependency Petition. Upon discharge from the hospital, J.B.D.E. was placed in a Dauphin County Families United foster home. Within one week of J.B.D.E.'s birth, Mother tested positive for PCP. On April 6, 2016, J.B.D.E. was adjudicated dependent.
>
> The Juvenile Court ordered that Mother complete the following objectives:
>
>> 1. Attend all court hearings, Agency meetings and treatment plan meetings;
>> 2. Sign all release of information forms requested by the Agency;
>> 3. Notify the Agency within 24 hours of new residence or new contact information;
>> 4. Complete a drug and alcohol evaluation and follow through with any and all recommendations;
>> 5. Provide three urine screens to the Agency per week;
>> 6. Notify the Agency caseworker of any scheduled evaluations;
>> 7. Participate in the Holistic Family Support Program;
>> 8. Complete a psychological evaluation and follow through with any recommendations;

9. Participate in and complete a parenting assessment in order to assess if Mother has the capability to provide a safe and stable living environment.

(Petition for Involuntary Termination of Parental Rights, para. ccc (i-ix)).

On June 20, 2016, Mother was incarcerated related to her occupying a stolen vehicle. Mother remained incarcerated until June 30, 2016. Upon her release, Mother entered an inpatient drug and alcohol treatment program, which she left against medical advice on August 12, 2016. Mother was again incarcerated in November 2016 for violation of bail conditions.

On February 28, 2017, Mother was arrested and found in possession of a firearm. On July 11, 2017, Mother pled guilty to firearms and drug charges and [was] sentenced to nine to twenty[-]three months to be served in the Dauphin County Work Release Center. Mother was released from the Work Release Center on December 14, 2017. Following release, on January 25, 2018, Mother tested positive for PCP.

Mother failed to complete any inpatient or outpatient drug and alcohol program, or psychological evaluation. Mother participated in supervised visitation while not incarcerated. Because of her incarceration, Mother failed to comply with services offered to assist with housing.

J.B.D.E. has lived in the same foster home since discharge from the hospital. He is developmentally delayed. J.B.D.E. requires a feeding tube and suffers seizures related to Fetal Alcohol Syndrome. J.B.D.E.'s medical conditions require constant, intensive caretaking. J.B.D.E. sees specialists several times each month, or more frequently if he becomes ill. The foster parents have received instruction from the medical providers to care for J.B.D.E.'s significant medical conditions.

J.B.D.E. is bonded with his foster parents and has made tremendous progress under their care and has begun to walk, although not previously expected to do so.

J.B.D.E. has never lived with Mother. Mother has never provided any essential parental care. Because of Mother's lack of experience in handling J.B.D.E.'s seizures, the foster parents

attend Mother's visitation. J.B.D.E. has undergone multiple surgeries. Mother never visited J.B.D.E. during any hospitalization. Mother has never met with medical providers to obtain information as to how to care for J.B.D.E.'s needs.

Trial Court Opinion (TCO), 5/22/18, at 1-4 (citations to the record omitted).

On December 29, 2017, the Agency filed the petition to involuntarily terminate Mother's parental rights. The termination hearing was held on March 6, 2018. After all evidence was submitted, the court announced its decision to grant the Agency's petition to terminate Mother's parental rights under 23 Pa.C.S. § 2511(a) and (b) and to change the goal for Child to adoption. On April 3, 2018, Mother filed the instant appeal. Then, on June 22, 2018, Mother's counsel filed an *Anders* brief.[3] Counsel's petition to withdraw was filed on July 6, 2018, after counsel was directed to do so by order of this Court, dated July 2, 2018. Mother did not respond to counsel's petition.

Before reaching the merits of Mother's appeal, we must first address counsel's request to withdraw. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting *Commonwealth v. Smith*, 700 A.2d

---

[3] Counsel's statement that there are no non-frivolous matters that can be raised on appeal is accepted in lieu of a concise statement of errors complained of on appeal. *See Commonwealth v. Goodwin*, 928 A.2d 287, 293 (Pa. Super. 2007); *see also* Pa.R.A.P. 1925(c)(4).

1301, 1303 (Pa. Super. 1997)).  "In **In re V.E.**, 417 Pa. Super. 68, 611 A.2d 1267 (1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights."  **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014).  To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)).  With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."  **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an **Anders** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record,

controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel filed a petition to withdraw, certifying that she reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel attached to her brief and to her petition to withdraw a copy of her letter to Mother, advising her that she may obtain new counsel or raise additional issues *pro se*. The brief that counsel filed with this Court includes a summary of the history and facts of the case and identifies one issue, which is stated as follows:

> Did the trial court abuse its discretion[] or commit an error of law by determining it was in [Child's] best interest to have Mother's parental rights terminated by clear and convincing evidence?

*Anders* brief at 8.

However, after further review of counsel's brief, this Court was compelled to remand for the preparation of either a corrected *Anders* brief or an advocate's brief. The reason for the remand rested on the fact that the issue on appeal related to the best interests, *i.e.*, needs and welfare, of Child, while the entire argument section of the brief solely addressed Mother's lack of progress in rectifying her substance abuse, housing, mental health treatment, and her failure to complete a parenting assessment. We have now received counsel's substituted brief and conclude that counsel has substantially complied with the requirements of *Anders* and *Santiago*. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the *Anders* requirements is sufficient).

- 6 -

Accordingly, we may proceed to review the issue outlined in the revised *Anders* brief and "conduct [our] independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). Counsel's revised brief contains the same issue raised in her prior brief:

> Did the trial court abuse its discretion, or commit an error of law by determining it was in [Child's] best interest to have Mother's parental rights terminated by clear and convincing evidence?

Revised *Anders* brief at 8.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

- 7 -

*Id.* at 276 (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

Because Mother's only issue concerns Section 2511(b), we need not discuss the facts as they relate to Section 2511(a). Rather, we direct our analysis to Section 2511(b). This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

The trial court provided the following discussion concerning Section 2511(b), stating:

> Pursuant to Section 2511(b), a court must give "primary consideration to the [developmental, physical and emotional] needs and welfare of the child." *In re J.E.*, 745 A.2d 1250, 1254-55 (Pa. Super. 2000) (citations omitted). The statute provides,
>
> > **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are

> first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.[] § 2511(b).

In addition, the Superior Court has stated that while "Section 2511(b) does not explicitly require a bonding analysis, [case law provides that an] analysis of the emotional bond, if any, between a parent and a child is a factor to be considered in determining the developmental, physical and emotional needs and welfare of the child under § 2511(b)." *In the Matter of K.K.R.-S., K.M.R., K.A.R.,* 958 A.2d 529, 533 (Pa. Super. 2008). The Superior Court has explained,

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent child bond, paying close attention to the effect of permanently severing the bond.

*In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006).

Mother presented no evidence upon which we may find that a bond exists which, if broken, will cause detriment to J.B.D.E.

In contrast, we find that J.B.D.E. has bonded with his foster parents and that his best interests are served in their home. They have provided J.B.D.E with all of the day to day care, love and protection required since his discharge from the NICU in March 2016. The foster parents are the only family J.B.D.E has ever known.

Removal from the pre-adoptive foster home would not only sever the bond of love, comfort, security, and stability which J.B.D.E. enjoys, but would place him in danger. We cannot subordinate J.B.D.E.'s best interests to the hope that Mother might resolve her longstanding drug addiction and acquire the necessary commitment to properly parent J.B.D.E.

TCO at 8-9.

Based upon the facts found by the trial court, which our independent review reveals are supported by the evidence of record, we discern no abuse of discretion in the conclusion that terminating Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. *See Flowers*, 113 A.3d at 1250. Therefore, we grant counsel's petition to withdraw, and affirm the trial court's decree terminating Mother's parental rights.

Decree affirmed. Petition to withdraw granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/17/2018